UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case No._____

| | |
|---|---|
| TARNEICE A. H. MINES<br>9504 VAN BUREN STREET<br>Lanham, Maryland 20706<br><br>    Plaintiff,<br><br>v.<br><br>THE CAPITAL GROUP COMPANIES<br>3000 K Street, N.W.<br>Suite 230<br>Washington, DC  20007<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT

  Plaintiff, Tarneice A. H. Mines, by and through her attorney, for her complaint against Defendant, states the following:

INTRODUCTION

  1. This is a civil action brought pursuant to 42 U.S.C. § 1981 seeking damages against Defendants for committing acts in violation of federal laws that protect Plaintiff from discriminatory denial of her right to make and enforce contracts.

JURISDICTION AND VENUE

  2. Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343.  Plaintiff further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the District of Columbia.

3. Venue is proper in this court under 28 U.S.C. § 1391(b) because the incidents at issue occurred in Washington, D.C.

## PARTIES

4. Plaintiff, Tarneice A. H. Mines, (hereinafter referred to as "Mrs. Mines") is an American citizen of African-American ancestry and resident of Lanham, Maryland

5. Defendant, The Capital Group Companies, (hereinafter referred to as "Capital Group") is a Delaware Corporation doing business as The Capital Group, a major investment company located in the District of Columbia and operating under the laws of the District of Columbia.

## STATEMENTS OF FACTS

6. Tarniece Mines began her employment with The Capital Group Companies in July 2003 as a temporary employee and was classified as an Investment Group Assistant II. As a temp, she was initially assigned to work with Steve Wanek and Karen Miller. Hiroko Kono began employment after this time. During her interview, however, she was informed that the position would provide support to three positions as opposed to the two people that all of the other Investment Group Assistants were required to support.

7. By September 29, 2003, Ms. Mines was assisting Portfolio Managers Hiroko Kono (Asian American) and Karen Miller (Caucasian), along with Investment Analyst Steven Wanek (Caucasian). She was involved in managing their institutional client's investment portfolios. Her primary duties were to provide Mrs. Kono, Mrs. Miller and Mr. Wanek with administrative support, and assist them to manage their travel calendars and itineraries and other duties.

8. In April 2004 Ms. Mines received her first performance review from Mrs. Kono and Mr. Wanek. She received positive performance reviews from each of them. Both managers noted that Ms. Mines had exceeded in meeting their expectations. They commented that she was an excellent person to work with, showing consistent improvement with regard to the Capital Group's software package, and that she worked well with others.

9. Mrs. Karen Miller was out of the office, due to maternity leave, during the summer of 2004. Upon her return in late 2004, Mrs. Miller's conduct toward Ms. Mines was very discourteous, abrasive, and dismissive. Ms. Miller clearly informed Ms. Mines of her desire not to work with her. Ms. Miller expressed that she was not happy with Ms. Mines or her performance. Ms. Miller did not provide any reasons for these conclusions.

10. In late October 2003, Ms. Mines contacted Ms. Kristin Knewonski, of Capital's Human Resources Department and informed her of the hostile treatment and offensive comments made by Mrs. Miller, without reason or provocation. Ms. Mines informed Ms. Knewonski that she thought it was a personality conflict, but Mrs. Miller had not provided her with any insight into the nature of the problem. Ms. Mines requested an immediate transfer from Mrs. Miller's supervision. Ms. Mines informed Ms. Knewoski that, under the circumstances, she was not comfortable working with Mrs. Miller. Ms. Knewonski informed Ms. Mines that there were no similar positions available in the organization. She also informed Ms. Mines that she felt that she was overreacting, as Mrs. Miller had not spoken to her regarding any problems. Ms. Knewonski suggested that Ms. Mines give it a little more time.

11. In early 2005 a new Investment Group Assistant, Lindsay Beach, joined the company. Ms. Beach was assigned to work with Hiroko Kono and a new Analyst that was

3

scheduled to be transferred from another office outside of the United States. Ms.Mines was distressed that she was denied a transfer from Mrs. Miller, since Ms. Beach was given an identical position.

12. Early in 2005, Ms. Mines became extremely ill. Anytime I missed time from the job, Mrs. Miller communicated her extreme displeasure in a sarcastic and demeaning manner.

13. In the spring of 2005, an Echocardiography and Nuclear Cardiology testing revealed that Ms. Mines had Collagenous Colitis (lymphocytic colitis). Unfortunately, Ms. Mines had to miss many days from the job at Capital Group. She received short term disability and accumulated sick leave was required to be utilized from the Capital Group. Ms. Mines regularly called the Capital Group and informed the Office Manager concerning her anticipated need for leave. She also kept her supervisors, Mrs. Miller and Mr. Wanek, as well as, Ms. Knewonski in Human Resources, up-to-date on her medical situation.

14. In August 2005, Ms. Mines had to have major surgery for a separate medical condition. When she learned of the condition and her need for surgery, she fully disclosed her condition to Capital Group. Ms. Mines missed 6 weeks of work due to the surgery and recovery. During this time, she was on short-term disability. She returned to Capital Group in October 2005.

15. In October 2005, Mrs. Miller called Ms. Mines into her office for what she called a performance review. The meeting lasted approximately ten minutes and highlighted that things were going okay. At this meeting, Ms. Mines was also informed that she would be receiving a one percent increase in pay as incentive to work harder in the job, now that her surgery was behind her. She stated that she still had a lot to learn and that she should continue to learn from her co-workers and take training classes. Ms. Miller touched briefly on Ms. Mines' time away

4

from the office; stating that it had hindered her being able to have a formal review process and that she should work on being there at all times, as it is disruptive to the job and what she had to do for the company.

16.    The Capital managers, Mrs. Miller and Mr. Wanek, treated Ms. Beach differently than Ms. Mines.  For example, Ms. Beach was permitted to have longer lunches and to take time off from work.

17.    Mrs. Miller and Mr. Wanek addressed Ms. Beach in a totally different manner than the offensive, critical and abusive manner in which they addressed Ms. Mines.

18.    Ms. Beach was often late returning from lunch, but her tardiness was never recorded by management and she was never reprimanded or disciplined for her behavior.  Ms. Mines was monitored constantly and any tardiness on her behalf was always reported or reprimanded.  Ms. Mines normally worked through her lunch hour, as she had no one to cover the telephones during her absence and Mrs. Miller did not want her telephones to go to voicemail.

19.    Ms. Beach often made personal telephone calls and were never monitored and was never reprimanded.  Ms. Mines was always monitored and always reprimanded for making telephone calls.

20.    In October 2005, Ms. Mines was called into a meeting with her managers and Laura Gruber (Caucasian), Human Resources Representative.  Ms. Mines was told that Mrs. Miller and Mr. Wanek were dissatisfied with her performance. The performance reviews were totally negative.  At a meeting to discuss Ms. Mines' performance, Mrs. Miller stated that her work was like that of a factory worker.   Ms. Miller further insulted Ms. Mines's character and her work ethic by suggesting that she needed to use her brain and learn how to think outside of

the box. Ms. Miller continued by saying that this job required her to think for her, without relying on Ms. Miller to tell Ms.Mines everything that needed to be done.

21. At the meeting, Mrs. Miller did nearly all the talking. Mr. Wanek was silent and Ms. Gruber spent the time asking Ms. Mines, "Do you understand what it is she is trying to tell you?" or "Do you understand what she is saying?" Mrs. Miller indicated that she was not happy with anything that Ms. Mines did and she did not think that Ms. Mines performed her duties effectively or efficiently. Ms. Mines found this quite troubling, since Ms. Miller mentioned none of these concerns during Ms. Mines's October 2005 informal review session.

22. After twenty-four (24) months of employment, this was Ms. Mines first formal review. As a result of this meeting, Ms. Mines was denied a portion of her Christmas bonus, her entire spring bonus and an annual pay increase. When Ms. Mines was given the review of benefits during her initial interview, she was never informed that the bonus was contingent upon her performance. They lead Ms. Mines to believe that bonuses were a benefit of working for the company.

23. By this time, a new Human Resources Director, Maurine Murphy, had taken charge of the District of Columbia office.

24. Ms. Mines called Ms. Murphy and requested a meeting. Three days later, Ms. Murphy arranged a conference call to speak with Ms. Mines. Ms. Mines informed Ms. Murphy of Mrs. Miller and Mr. Wanek's hostile treatment toward her, which she believed to be racially motivated. Ms. Mines specifically stated that she felt that she was being discriminated against because of her race.

25. Shortly thereafter, Ms. Mines met with Ms. Murphy and was informed that Ms. Murphy had met with Mrs. Miller and Mr. Wanek. Ms. Mines was told that her concerns would

be investigated. She told Ms. Murphy that a Caucasian co-worker, Lindsay Beach, was being treated more favorably than her.

26. In March 2006, Ms. Mines had a follow up meeting and was told that the company was looking for perfection from her. They told her that if she could not provide it, they would begin the process to get rid of her. Mrs. Miller was not in attendance at this meeting; however, she provided a list of her concerns for Ms. Murphy to address. Mr. Wanek expressed serious concerns about Ms. Mines's performance. Ms. Mines was shocked, since this was the first time that Mr. Wanek had ever expressed any real issues with Ms. Mines's performance.

27. Ms. Mines was put on a performance improvement plan for conduct, while non-African American employees, like Ms. Beach, were not being disciplined nor placed on performance plans.

28. In 2005, Ms. Mines saw a psychiatrist for the first time. The psychiatrist prescribed medication for severe chest pains. The chest pains were attributed to stress.

29. On or about June 9, 2006, Ms. Mines requested to review her personnel file. In a meeting with Ms. Murphy, Ms. Mines was asked, "What would it take for you to leave?", "Is it the money, benefits?" Ms. Mines told Ms. Murphy that if they wanted her to leave, they would have to fire her. Ms. Murphy, the HR Director, told Ms. Mines that her office would review the situation in 6 to 8 weeks.

30. On June 19, 2006, Ms. Mines filed a charge of discrimination with the EEOC.

31. Ms. Mines was terminated by the Capital Group on June 29, 2006.

32. The Defendant, Capital Group, based their decision to discharge Mrs. Mines on her race and also in retaliation for Mrs. Mines expressing complaints and concerns about Defendant unfair, unprofessional and racially biased disparate treatment. The arbitrary,

unreasonable and discriminatory manner in which Defendant's management handled Mrs. Mines' complaints and her verbal concerns about unprofessional discriminatory treatment resulted in the wrongful dismissal of Mrs. Mines and the resulting injuries to her emotional and physical wellbeing.

33.     As a direct and proximate result of the actions of the Defendant, Mrs. Mines has suffered and will continue to suffer significant losses and emotional injuries including but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damages to her professional reputation.

## COUNT I

### Disparate Treatment
### 42 U.S.C. §1981

34.     Plaintiff incorporates by reference paragraphs 1 through 33 as if fully set forth herein.

35.     Defendant denied Mrs. Mines the same rights to make and enforce contracts with full and equal benefits of all laws and proceedings for the security of persons and property, as enjoyed by white citizens.  Defendants intentionally violated Mrs. Mines' right to contract and enjoy equal protection under the law based on Mrs. Mines' race.  As a direct and proximate result of the actions of Defendant, Mrs. Mines has suffered lost wages and other economic losses and other compensation such as benefits and bonuses and will continue to suffer severe damages and injuries including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation.

WHEREFORE, Plaintiff demands judgment against Defendant and the following relief:

a) An award of equitable relief for lost wages, compensation, future lost earnings, economic losses pre- and post-judgment interest and any other affirmative relief that may be deemed appropriate at trial; and

b) An award of non-pecuniary compensatory damages for the emotional injuries she suffered as a direct result of Defendant's unlawful conduct including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation; and

c) An award of punitive damages to punish and deter Defendant's intentional, reckless and malicious conduct; and

d) An award of the disbursements, costs, expenses, expert witness fees, and attorney's fees incurred by Plaintiff in bringing this action; and

e) Such other relief as the court deems proper and just.

## COUNT II

### RETALIATION
### 42 U.S.C. § 1981

36. Plaintiff incorporates by reference paragraphs 1 through 35 as if fully set forth herein.

37. Defendant denied Mrs. Mines the same rights to make and enforce contracts with full and equal benefits of all laws and proceedings for the security of persons and property, as enjoyed by white citizens including her right to complain about disparate treatment or engage in protected activity designed to protect her or other African Americans right to be free from discrimination in contracting. Defendants intentionally violated Mrs. Mines' right to contract and enjoy equal protection under the law based on Mrs. Mines' race. As a direct and proximate

result of the actions of Defendant, Mrs. Mines has suffered lost wages and other economic losses and other compensation such as benefits and bonuses and will continue to suffer severe damages and injuries including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation.

WHEREFORE, Plaintiff demands judgment against Defendant and the following relief:

a) An award of equitable relief for lost wages, compensation, future lost earnings, economic losses pre- and post-judgment interest, and any other affirmative relief that may be deemed appropriate at trial; and

b) An award of non-pecuniary compensatory damages for the emotional injuries she suffered as a direct result of Defendant's unlawful conduct including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience and damage to her professional reputation; and

c) An award of punitive damages to punish and deter Defendant's intentional, reckless and malicious conduct; and

d) An award of the disbursements, costs, expenses, expert witness fees, and attorney's fees incurred by Plaintiff in bringing this action; and

e) Such other relief as the court deems proper and just.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS.

                                                           Respectfully submitted,

                                                           _____

                                                           Teresa W. Murray, Esquire
                                                           7474 Greenway Center Drive
                                                           Suite 820
                                                           Greenbelt, Maryland 20770
                                                           (301) 982-2005

Dated this ____ day of June, 2008

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

## DEFENDANTS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

   1  U.S. Government Plaintiff
   2  U.S. Government Defendant
   3  Federal Question (U.S. Government Not a Party)
   4  Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### A. *Antitrust*

410  Antitrust

### B. *Personal Injury/ Malpractice*

310  Airplane
315  Airplane Product Liability
320  Assault, Libel & Slander
330  Federal Employers Liability
340  Marine
345  Marine Product Liability
350  Motor Vehicle
355  Motor Vehicle Product Liability
360  Other Personal Injury
362  Medical Malpractice
365  Product Liability
368  Asbestos Product Liability

### C. *Administrative Agency Review*

151  Medicare Act

**Social Security:**
861  HIA ((1395ff)
862  Black Lung (923)
863  DIWC/DIWW (405(g)
864  SSID Title XVI
865  RSI (405(g)
**Other Statutes**
891  Agricultural Acts
892  Economic Stabilization Act
893  Environmental Matters
894  Energy Allocation Act
890  Other Statutory Actions (If Administrative Agency is Involved)

### D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### E. *General Civil (Other)*   OR   F. *Pro Se General Civil*

**Real Property**
210  Land Condemnation
220  Foreclosure
230  Rent, Lease & Ejectment
240  Torts to Land
245  Tort Product Liability
290  All Other Real Property

**Personal Property**
370  Other Fraud
371  Truth in Lending
380  Other Personal Property Damage
385  Property Damage Product Liability

**Bankruptcy**
422  Appeal 28 USC 158
423  Withdrawal 28 USC 157

**Prisoner Petitions**
535  Death Penalty
540  Mandamus & Other
550  Civil Rights
555  Prison Condition

**Property Rights**
820  Copyrights
830  Patent
840  Trademark

**Federal Tax Suits**
870  Taxes (US plaintiff or defendant
871  IRS-Third Party 26 USC  7609

**Forfeiture/Penalty**
610  Agriculture
620  Other Food &Drug
625  Drug Related Seizure of Property 21 USC 881
630  Liquor Laws
640  RR & Truck
650  Airline Regs
660  Occupational Safety/Health
690  Other

**Other Statutes**
400  State Reapportionment
430  Banks & Banking
450  Commerce/ICC Rates/etc.
460  Deportation

470  Racketeer Influenced & Corrupt Organizations
480  Consumer Credit
490  Cable/Satellite TV
810  Selective Service
850  Securities/Commodities/ Exchange
875  Customer Challenge 12 USC 3410
900  Appeal of fee determination under equal access to Justice
950  Constitutionality of State Statutes
890  Other Statutory Actions (if not administrative agency review or Privacy Act

| G. *Habeas Corpus/ 2255*<br><br>530 Habeas Corpus-General<br>510 Motion/Vacate Sentence | H. *Employment Discrimination*<br><br>442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | I. *FOIA/PRIVACY ACT*<br><br>895 Freedom of Information Act<br>890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | J. *Student Loan*<br><br>152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| K. *Labor/ERISA (non-employment)*<br><br>710 Fair Labor Standards Act<br>720 Labor/Mgmt. Relations<br>730 Labor/Mgmt. Reporting & Disclosure Act<br>740 Labor Railway Act<br>790 Other Labor Litigation<br>791 Empl. Ret. Inc. Security Act | L. *Other Civil Rights (non-employment)*<br><br>441 Voting (if not Voting Rights Act)<br>443 Housing/Accommodations<br>444 Welfare<br>440 Other Civil Rights<br>445 American w/Disabilities-Employment<br>446 Americans w/Disabilities-Other | M. *Contract*<br><br>110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholder's Suits<br>190 Other Contracts<br>195 Contract Product Liability<br>196 Franchise | N. *Three-Judge Court*<br><br>441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

1 Original Proceeding    2 Removed from State Court    3 Remanded from Appellate Court    4 Reinstated or Reopened    5 Transferred from another district (specify)    6 Multi district Litigation    7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23    **DEMAND $**    **JURY DEMAND:**    Check YES only if demanded in complaint    **YES**    **NO**

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    **YES**    **NO**    If yes, please complete related case form.

**DATE**        **SIGNATURE OF ATTORNEY OF RECORD**

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

   I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

   III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

   IV.   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

   VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

   VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.