UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Tarniece A.H. Mines,

    Plaintiff,

    v.                                          Civil Action No. 08-1118 (EGS/JMF)

Capital Group Companies,

    Defendant.

**MEMORANDUM OPINION**

Currently pending and ready for resolution are the parties' disputes regarding the discoverability of plaintiff's medical and employment records. Each will be considered in turn.

I.    <u>Medical Records</u>

When an employee seeks compensatory damages for the emotional pain and suffering caused by her employer, she may thereby place the existence and extent of her medical injury in controversy by the manner in which she intends to prove them. Thus, in <u>Smith v. Koplan</u>, 215 F.R.D. 11 (D.D.C. 2003), this Court permitted discovery of plaintiff's medical records when she had symptoms of depression and anxiety that had persisted for three years as a result of the defendant's discriminatory behavior. <u>Id.</u> at 13. In another case, <u>Moore v. Chertoff</u>, No. 00-CV-953, 2006 WL 1442447, at *2 (D.D.C. May 22, 2006), plaintiffs sought damages based on "emotional distress [which] had been manifested in a variety of ways including, but not limited to, psychological trauma and physical symptoms to be proven at trial." <u>Id.</u> at *1. Judge Roberts ordered that plaintiffs' medical records be produced, concluding that "a defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to a plaintiff's claimed emotional distress, and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so." <u>Id.</u> at *2. The burden, however, rests on the party resisting discovery to show that the information sought is either irrelevant under Rule 26(b)(1) of the

Federal Rules of Civil Procedure or of such marginal relevance that the harm of discovery outweighs the benefit. Id. (citations omitted).

During the conference call that the Court had with counsel, plaintiff's counsel indicated that she had named physicians as fact witnesses and conceded the following: "We know in employment discrimination cases where emotional injuries are being alleged, that this [i.e. medical records being produced] is at issue." Transcript of status conference held on September 1, 2009 at 7.  She also indicated that she had received from plaintiff's physicians, those identified as potential fact witnesses, the records of their treatment of plaintiff and had made those available to defendant's counsel. Id. at 8-9.  Plaintiff's objection is to the breadth of the interrogatories; according to counsel, who was reading from them, they demand "'reports and records relating to your physical and mental condition in the ten years [preceding] the filing of the lawsuit, up to and including the date of trial.'" Id. at 8.

Defendant's counsel countered that the list of medical providers that plaintiff's counsel identified as fact witnesses was not a complete list of all her medical providers and that the defendant had the right to subpoena the records from all of plaintiff's providers. Id. at 12-13.

Both sides make valid points.  Plaintiff cannot insist upon a right to control how the defendant defends itself from her damages claims by insisting that defendant's access to her medical records be limited to those physicians she chooses to disclose.  On the other hand, the records of plaintiff's visits to her dentist or podiatrist, records that would fall within the interrogatory that plaintiff's counsel quoted during the status hearing, could not possibly be relevant to plaintiff's emotional pain and suffering, its causes, and the resulting diagnoses and prognoses.  Plaintiff shall therefore be ordered to sign an authorization for the release of medical information from her medical providers with the caveat that it shall be limited in scope to records relating solely to her claims for compensable physical or emotional damages allegedly

2

caused by defendant's actions.  Specifically, plaintiff shall authorize the release of all records that relate or pertain to symptoms, conditions, or treatment of any emotional, physical, or mental condition whatsoever that might pertain to complaints of anxiety, distress, depression or stress. These would certainly include those records relating to plaintiff's visit with a psychiatrist in 2005 and the resulting treatment for severe chest pains, as referenced in plaintiff's complaint at paragraph 7.  The scope of the release must include records from the beginning of plaintiff's employment to the present date.  See Nuskey v. Lambright, 251 F.R.D. 3, 9 (D.D.C. 2008).

I appreciate that it may be difficult to identify which medical providers may have treated plaintiff for the conditions I have specified.  I will therefore ask counsel to meet after plaintiff's counsel has provided the defendant's counsel with a list of all medical providers that have treated plaintiff in the period of time I specified.  I expect the parties to eliminate in good faith all those providers whose services could not possibly meet my definition.  As to any others, I expect that the parties will err on the side of caution and agree on a release of medical records from any provider who might appear to a reasonable person to have treated the plaintiff for the conditions I have described.  If the records, produced subject to the protective order already in place, are irrelevant to plaintiff's emotional, physical or mental condition, they shall be destroyed.  I will remain available to counsel to resolve any dispute that they cannot resolve with the understanding that I expect them to cooperate in a professional manner.

I appreciate that it could be argued that the scope of the records should include a period of time before plaintiff became employed, upon the theory that her present symptoms may have been caused by events that occurred before she went to work for the defendant.  At this point, however, that is only a theoretical possibility, one which should not, on this record, overwhelm the plaintiff's significant interest in the privacy of her medical records.  If the records that are produced contain information that suggests, for example, that plaintiff's symptoms might have

been caused by events that occurred prior to her starting work for defendant, I will consider an application to broaden the scope of the releases.

II.     Employment Records

In addition to disputing the extent of the release of plaintiff's medical records, the parties also dispute the extent to which plaintiff's previous employment records should be released. Defendant contends that plaintiff has refused to turn over a complete list of her previous employers and that she has also refused to sign a release enabling defendant to subpoena records from those employers. Plaintiff again objects to the form of the release as prepared by defendant and claims that defendant already has the requested information as a result of plaintiff's having applied to and been hired by defendant.

It could not be clearer that defendant, if it sought to defend itself against the claim of discrimination on the grounds that plaintiff's poor performance was the reason for her termination, could not offer into evidence proof of her poor performance in a previous job upon the theory that her current behavior was in conformity with her past behavior. In Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507 (D.C. Cir. 1995), a Title VII sex discrimination case, the district court admitted into evidence "written evaluations of Neuren's [plaintiff's] work at DL & A [prior employer-other law firm] and related testimony regarding Neuren's difficulty in getting along with staff and meeting deadlines while an associate at DL & A. Id. at 1510. According to the district court, evidence relating to plaintiff's difficulties with personal relationships at her previous firm was relevant to how she performed at the firm she was now suing. Id. On appeal, however, the court of appeals explained that drawing an inference that her behavior on an earlier occasion was relevant to establish her behavior on a later occasion was precisely what Federal Rule of Evidence 404 prohibits:

4

> Both AMM&S and the district court misapprehend the Federal Rules' treatment of character evidence. Under Federal Rule of Evidence 404, "evidence of a person's character or a trait of [her] character is not admissible for the purpose of proving that [she] acted in conformity therewith on a particular occasion," except in certain defined circumstances none of which is present here. FED. R. EVID. 404(a). Additionally, Rule 404(a) provides specifically that evidence of prior acts cannot be introduced to prove the character of a person in order to show that she acted in conformity therewith. FED. R. EVID. 404(b). When the district court admitted the DL&A evidence relating to Neuren's difficulties with personal relationships at that firm, it noted that the evidence was "relevant with respect to how she performed at another firm . . . [AMM&S is] just showing that this is the same problem that this woman had." Trial Transcript, October 7, 1993, at 98-99, reprinted in Joint Appendix, at 83-84. Thus, the district court admitted the evidence for the purpose specifically prohibited by Rule 404--as evidence that she acted in conformity with her behavior at DL&A while working for AMM&S.

Id. at 1511. Thus, the purported justification for the admissibility of evidence of her prior performance—she did it once, she must have done it again—is the very inference the law forbids.

I do see one possibility that the certain records of prior employers might lead to relevant evidence. An analogy is helpful. It would seem to be impermissible to ask a rape victim whether she has made prior accusations of rape by other men for her making the complaints says nothing about her credibility; indeed, if they were justified, it enhances her credibility. But if she made accusations that were false, there is a more compelling case for the admission of that evidence. See e.g., New Jersey v. Bray, 356 N.J. Super. 485 (Sup. Ct. N.J. 2003); Humphrey v. Geo, 428 S.E. 2d 362 (Ct. App. Ga. 1993). Thus, in Hemphill v. Wash. Metro. Area Transit Auth., 982 F.2d 572 (D.C. Cir. 1993), it was error to tell the jury that it could infer from the mere making of prior claims that the present claim was dubious; such a charge "may not be given, absent a showing of fraud in making other claims." Id. at 575. Similarly, in Roundtree v. United

5

States, 581 A.2d 315 (D.C. 1990), a victim's past allegations of rape "would be probative of hercredibility only if they were fabricated." Id. at 321.

Thus, in this case, whether plaintiff made accusations of discrimination against prior employers is not as important as knowing that she made them and they were meritless.  I appreciate, however, that the records of the prior employers may not in themselves speak to the truth or falsity of the accusations.  But, the breadth of discovery that permits exploration of evidence that might lead to relevant evidence convinces me that defendant should be permitted to seek from prior employers records that pertain to prior complaints of discrimination, and defendant can then explore the truth or falsity of those accusations as it sees fit.  Hence the release plaintiff must sign shall be limited to records that pertain to accusations of discrimination that plaintiff made against former employers.

An Order accompanies this Memorandum Opinion.

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE